# United States Court of Appeals
## For the First Circuit

No. 13-2266

ROBERTO CARLOS DOMINGUEZ,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Thompson, Circuit Judges.

Gerald A. Phelps for appellant.
Brian Pérez-Daple, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

August 27, 2015

**HOWARD**, <u>Chief Judge</u>. Plaintiff-appellant Roberto Carlos Dominguez filed suit seeking money damages against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671 et seq. Dominguez alleged that in 1998 and 1999 he was wrongfully detained and deported as an unauthorized alien despite his true status as a United States citizen. The district court dismissed the case as time barred on the government's motion, thereby rejecting Dominguez's attempt to use the discovery rule as shelter for his claims. Concluding that delayed accrual is foreclosed by the factual allegations in Dominguez's complaint, we affirm.

We construe the facts alleged favorably to the plaintiff, and, viewed through that lens, the complaint and attached exhibits present the following facts. See <u>Yacubian</u> v. <u>United States</u>, 750 F.3d 100, 107-08 (1st Cir. 2014). Federal immigration authorities detained Dominguez from July 1998 through September 1999. In the course of numerous interrogations, Dominguez told Immigration and Customs Enforcement ("ICE") agents that he was born in Lawrence, Massachusetts, but the agents failed to investigate his citizenship status beyond the immigration file and ignored his claim of a United States birthplace. After an administrative hearing before an Immigration Judge ("IJ") in September 1999, Dominguez was ordered removed to the Dominican Republic. ICE agents told him that if he ever returned to America he would be incarcerated.

Dominguez lived in the Dominican Republic for the next ten years. At some point, friends and family told him to go to the United States Embassy to see what, if any, paperwork he could obtain in order to return to the United States. Dominguez did so, and after submitting a United States birth certificate and other documentation, he was granted a U.S. passport. He returned to this country in September 2009, and for about a year he lived in fear that he again would be deported or thrown in jail. In November 2010, Dominguez met with a lawyer to "give himself up" but instead allegedly learned that his detention and deportation at the hands of the federal government had been illegal. Dominguez did not pursue relief until February 2012 when he first filed a damages claim through administrative channels as required under the FTCA. See 28 U.S.C. § 2675(a). Meanwhile, in October 2011, federal authorities had asked the Commonwealth of Massachusetts to detain him and also had required Dominguez to surrender his U.S. passport.[1]

In his complaint, Dominguez faults the government for, among other things, failing to investigate his claims of U.S. citizenship in 1998-1999 thereby causing his illegal detention and removal as a United States citizen. He attached to the complaint a purported Massachusetts birth certificate showing that he had

---

[1] At argument before us, the government represented that Dominguez is not in custody and that no removal proceedings are pending against him.

been born in Lawrence, Massachusetts on November 9, 1979.[2] Dominguez asserted claims against the United States and three individual federal employees who had been involved in his detention and deportation or in issuing the 2011 detention letter. The individual defendants later were dismissed from the case, leaving the federal government as the sole defending party.

After conducting a hearing on the government's motion to dismiss, the district court granted the motion and entered a final judgment of dismissal in September 2013. We review the court's decision de novo. Sanchez v. United States, 740 F.3d 47, 52 (1st Cir. 2014).

The FTCA permits suits against the government for torts caused by the wrongful acts of any government employee while acting within the scope of his office or employment. See 28 U.S.C. §§ 1346(b)(1), 2645. Plaintiffs have two years from the time of accrual to file a claim with the appropriate agency and then, if the claim is denied, six months after the denial to file suit. See id. § 2401(b). Therefore, if Dominguez's detention and deportation in 1998 and 1999 constituted the accrual conduct, his decade-plus delay in filing an agency claim in February 2012 would, of course,

---

[2] The government identifies several discrepancies which, it claims, undermine the validity of the Massachusetts birth certificate document and stands by its initial reliance on documents in the immigration file to show Dominguez's Dominican Republic citizenship. It is unnecessary for us to decide the validity of the document.

-4-

bar his federal suit.  Application of the federal discovery rule is Dominguez's only hope, and it quickly fades.

The discovery rule applies to certain FTCA claims "under circumstances where the fact or cause of an injury is unknown to (and perhaps unknowable by) a plaintiff for some time after the injury occurs, and which will sometimes dictate that a claim accrues well after the time of the injury."  Rakes v. United States, 442 F.3d 7, 19 (1st Cir. 2006); see Sanchez, 740 F.3d at 52.  For such claims, the cause of action accrues once the plaintiff knows, or in the exercise of reasonable diligence should have known, the factual basis of the cause of action, which includes the existence of an injury and its probable causal connection to the federal government.  McIntyre v. United States, 367 F.3d 38, 52 (1st Cir. 2004); Callahan v. United States, 426 F.3d 444, 451 (1st Cir. 2005).  This objective inquiry focuses on when a person similarly situated to the plaintiff would have discovered necessary facts in the exercise of reasonable diligence.  See Sanchez, 740 F.3d at 52; McIntyre, 367 F.3d at 59.

Dominguez's own factual allegations in his complaint place the time of accrual well before February 2010, the date that is two years prior to his agency filing.  He alleges that he knew of his United States birthplace at the time of his deportation in 1999 and also that his detention and deportation by the United States government were based on his status as an unauthorized

-5-

alien.  He alleges that he knew that, even though he had told federal officials of his United States citizenship status, the immigration proceedings continued and resulted in his removal from this country as a foreigner.  Dominguez further alleges that, while in the Dominican Republic, he took steps to return to his alleged homeland and even acquired and delivered a Massachusetts birth certificate to the embassy.  All of this he knew prior to September 2009 when he returned to the United States.

These are more than enough facts to charge a reasonable person with knowledge, and certainly would put a person on at least inquiry notice, in 1999 or soon thereafter of the putative injury and its probable causal connection to the federal government.  Under any accounting, accrual occurred before September 2009 when Dominguez returned to the United States with a U.S. passport and birth certificate in hand.  This dooms his federal lawsuit.

Dominguez asserts, however, that while he knew he had been deported in 1999, he remained in the dark about the illegal nature of his deportation and its probable connection to the failures of ICE agents.  He contends that it was not until November 2010 when he met with a lawyer for the first time that the necessary basis for the cause of action became known to him.  This argument goes nowhere.  Federal law does not allow a potential plaintiff to await confirmation from an attorney before the

-6-

limitations period begins to run.  See Sanchez, 740 F.3d at 52; Rakes, 442 F.3d at 20 n.8; Callahan, 426 F.3d at 451.

In an attempt to keep the door slightly ajar, Dominguez asserts a type of duress or fraud argument that skews application of the reasonable person inquiry under the federal discovery rule. He claims that the 1999 threats of imprisonment should he return to the United States (and other vague allusions of "negligence, fraud, threats, and intimidation" by ICE agents) overpowered his mind and rendered him unable to link the government misconduct to his injury until 2010 when legal counsel cleared the cloud.  The trouble is, he relies on Massachusetts law (a single case) to advance his anemic argument, see Riley v. Presnell, 565 N.E.2d 780 (Mass. 1991), when it is federal law that governs the statute of limitations accrual question for FTCA claims.  See, e.g., United States v. Kubrick, 444 U.S. 111, 123 (1979); Sanchez, 740 F.3d at 52; see also Rakes, 442 F.3d at 19 n.7 (collecting cases).  And, federal law is to the contrary.  Cf. Rakes, 442 F.3d at 24-27 (demonstrating that the concepts of duress and fraudulent concealment pertain to tolling doctrines under federal law and are not part of the discovery rule calculus).

Dominguez also contends that the government's ongoing refusal to acknowledge his citizenship status constitutes a continuing tort that delays accrual of his FTCA claim until he is adjudicated a United States citizen.  However, not only was his

administrative complaint based only on the government's conduct in 1998-1999, but also he offers no argument as to how he could possibly be entitled to such an adjudication of his citizenship in the face of the IJ's 1999 deportation ruling that he neither appealed to the Board of Immigration Appeals nor sought to reopen. With this essential link lacking, Dominguez's continuing violation theory is a nonstarter. Cf., Fisher v. United States, 959 F.2d 230, 1992 WL 63516, at *4 (1st Cir. 1992) (per curiam) (unpublished disposition) (holding that false arrest with its ongoing effects is not a continuing tort and thus accrues at the time of arrest).

Finally, we note that any peripheral argument based on equitable tolling, see United States v. Kwai Fun Wong, 575 U.S. __, 135 S. Ct. 1625 (2015), either has been waived for lack of development, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), or is so embedded in his discovery rule arguments such that they fall together, see, e.g., Sanchez, 740 F.3d at 53-54 (holding that the plaintiff's patent lack of diligence forecloses equitable tolling of FTCA claim).

Because we resolve this case on statute of limitations grounds, we do not reach the government's other assorted bases for dismissal. The judgment of the district court is **affirmed**.

**Costs are awarded to the appellee.**